**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIRGINIA VALENZUELA,<br><br>              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>              Defendant. | NO. EDCV 10-01279-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Plaintiff seeks review of Defendant's decision denying her disability benefits. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

\\

\\

\\

## II.

**PROCEDURAL HISTORY**

On February 13, 2008, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI. (Administrative Record ("AR") 108-18). Plaintiff was born on March 27, 1966 and was 41 years old at the time she filed her applications for disability insurance benefits and SSI. (AR 108). Plaintiff's applications allege disability beginning on January 31, 2006, due to limitations resulting from sleep apnea, diabetes, asthma, high blood pressure, and obesity. (AR 108, 111, 134). Plaintiff's DIB and SSI applications were denied initially and upon reconsideration. (AR 46-49, 54-59).

Plaintiff thereafter requested a hearing by an Administrative Law Judge ("ALJ"). (AR 61-68). The hearing took place in San Bernardino, California on August 27, 2009 with ALJ Mason D. Harrell, Jr. presiding. (AR 20-41). At the hearing, Plaintiff, represented by counsel, appeared and testified. (AR 22-25, 31-37). On November 17, 2009, the ALJ issued an unfavorable decision, finding Plaintiff capable of performing a limited range of sedentary work. (AR 7-19). On January 5, 2010, Plaintiff requested review of the ALJ's decision before the Appeals Council. (AR 5). On July 17, 2010, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (AR 1-3).

\\
\\
\\

# III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510.

404, Subpart P, Appendix 1?  If so, the claimant is
                found disabled.  If not, proceed to step four.
        (4)     Is the claimant capable of performing his past work?  If
                so, the claimant is found not disabled.  If not, proceed
                to step five.
        (5)     Is the claimant able to do any other work?  If not, the
                claimant is found disabled.  If so, the claimant is
                found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 404.1520(a)(4).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(g). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a).

4

as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable, and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support

either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff argues that the ALJ failed to properly consider all of the available medical evidence and also failed to properly consider Plaintiff's subjective complaints. (Memorandum in Support of Complaint at 2, 5). Specifically, Plaintiff contends that the ALJ failed to give sufficient weight to the treating records that document Plaintiff's consistent and necessary use of a nebulizer. (Id. at 4). Similarly, Plaintiff contends that the ALJ failed to properly consider her testimony regarding her need for a nebulizer. (Id. at 6-7). This Court agrees with both arguments.

**A. The ALJ Failed To Properly Consider All The Relevant Medical Evidence And, In Particular, Failed To Give Proper Weight To The Treating Physician's Opinion**

"[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons . . . ." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. The opinions of treating physicians are entitled to

special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Although the ALJ refers to the treating records in his decision, he fails to give any reasons for rejecting the opinions of the treating doctor, Dr. Tarek Madhi, as reflected in the records at AR 175-77, 181, 187-88, 203-04, 207-08, 213-17, 225, 229, and 289-91. These records reflect constant and on-going serious treatment for Plaintiff's asthma and respiratory issues. At times, the records describe her asthma as "moderate persistent," (AR 187), and she was admitted to hospital emergency rooms on several occasions for respiratory ailments, such as "exacerbation of her asthma," "bronchitis," "severe shortness of breath," and "pneumonia." (AR 181, 203, 207, 217, 229, 291). Her treating doctor repeatedly prescribed her Albuterol to be taken through a nebulizer machine roughly three to four times per day, with a later addition of Atrovent. (AR 187, 188, 204, 216, 225, 232, 244, 245).

The ALJ notes that Dr. Madhi directed Plaintiff "to continue using Advair and Albuterol at home." (AR 14). However, the ALJ failed to note that Plaintiff was to take the Albuterol through a nebulizer device. (AR 188). Instead, he focused on Dr. Madhi's comment that Plaintiff's "asthma was doing well" in the treatment notes, without considering that Plaintiff's respiratory impairments had only improved through her frequent use of the nebulizer. (AR 14). The ALJ chose to give more weight to the opinion of the medical expert, Dr. Samuel Landau, (AR 17), who believed that the Plaintiff should only be using the nebulizer "once a day or twice a day," (AR 30), rather than the

amount prescribed by Dr. Madhi. For example, in a March 2007 evaluation, Dr. Madhi found that Plaintiff needed to use the nebulizer "every few hours, 3-4 [times] per day." (AR 187). During a February 2008 evaluation, Dr. Madhi found further that while her "[a]sthma [was] doing well," she "still [had] [A]lbuterol at home." (AR 225). Dr. Landau, while agreeing that Plaintiff might need the nebulizer on a daily basis as a "rescue," (AR 30), claimed he had considered the nebulizer when he stated "limitations for no excessive inhaled pollutants and . . . air conditioning," (AR 31), which the ALJ then adopted in Plaintiff's Residual Functional Capacity ("RFC"). (AR 17).

The Court finds that the ALJ failed to provide specific and legitimate reasons for disregarding the treating physician's findings, as reflected in the above-referenced records. Moreover, to the extent there was a conflict between the treating doctor's evaluation of Plaintiff and the medical expert's opinion, the conflict was not resolved by the ALJ. Plaintiff received serious and continued treatment for asthma and respiratory issues, as demonstrated by the repeated treatment of her condition with a nebulizer and several hospitalizations. (AR 175-77, 181, 203, 207, 217, 229, 291). Neither the ALJ nor the medical expert fully addressed the use of this nebulizer or the impact the device would have on Plaintiff's ability to work. As the ALJ did not give proper weight to the treating records and resolve the conflicts between those records and the medical expert's opinion, the case must be remanded. Upon remand, the ALJ is directed to consider fully all the evidence of record in his consideration of Plaintiff's disability claim and/or in formulating Plaintiff's residual functional capacity.

**B.  The ALJ Failed To Provide Clear And Convincing Reasons For Rejecting Plaintiff's Credibility**

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless there is affirmative evidence showing that a claimant is malingering, the ALJ's reasons for rejecting a claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834. Moreover, the ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

Plaintiff repeatedly testified throughout the course of the administrative hearing that her nebulizer use was both necessary and consistent. (AR 31-2, 34). When speaking of her breathing issues, she noted "I have to have my nebulizer in case I need to use it, you know. If I get shortness of breath, you know, I like depend on it because sometimes I find my inhaler not helping me. So that means I would only have to stop to use my nebulizer and maybe take half an hour there." (AR 31-2). When the ALJ further queried Plaintiff on her nebulizer use, she stated that she used the nebulizer "every day" and only on "the best of days [she] could use it two times a day." (AR 32). Instead, Plaintiff generally "use[d] [the nebulizer] three to four times a day." (Id.). Each application of the nebulizer would then take "about a half an hour," (id.), and would require Plaintiff to "go lay down for a

while." (AR 34). Plaintiff stated that "really anything" could cause her respiratory distress requiring the use of the nebulizer, even walking "a short distance" or talking with someone. (AR 33).

The ALJ failed to provide clear and convincing reasons to reject Plaintiff's credibility concerning the severity of her respiratory issues. First, the ALJ relied upon the fact that "[Plaintiff] reported to Dr. Madhi that her asthma was doing well, she was using her inhaler less than once a week and nighttime and daytime symptoms were less than once a month" as a means of proving Plaintiff's respiratory limitations were not credible. (AR 16). In addition, the ALJ found that Plaintiff's statements regarding her daily activities "did not indicate a disabling level of impairment." (Id.). However, the ALJ failed to consider Plaintiff's repeated hospitalizations for respiratory issues, (AR 181, 203, 207, 229, 291), and the fact that Plaintiff continued to use her nebulizer "every day . . . three to four times a day," (AR 32), under the advisement of her treating physician. As noted by the vocational expert ("VE"), use of the nebulizer as a rescue device and therefore necessarily unscheduled thirty minute breaks throughout the workday would "eliminate [light sedentary jobs] and all other jobs" from being considered by the Plaintiff for employment and dramatically change the RFC that the ALJ assigned to Plaintiff. (AR 40). The ALJ failed to address this issue and therefore his reasoning is incomplete.

The ALJ also failed to acknowledge that the vast majority of the record is consistent with Plaintiff's testimony that her daily activities were extremely limited. (AR 175-77, 181, 203, 207, 217, 229, 291). The treating records reflect that Plaintiff suffered from

10

constant respiratory issues, which she treated with numerous unscheduled daily uses of a nebulizer. As such, the ALJ failed to provide a clear and convincing reasons to reject Plaintiff's testimony. Upon remand, the ALJ must consider Plaintiff's testimony as to her nebulizer use in light of the entire record and if he rejects her testimony, he must provide clear and convincing reasons.

**C.    The ALJ's Hypothetical To The Vocational Expert Was Incomplete**

A hypothetical question posed to a vocational expert must contain "<u>all</u> of the limitations and restrictions" that are supported by substantial evidence. <u>Magallanes</u>, 881 F.2d at 756; <u>see also</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 863 (9th Cir. 2001). Here, the hypothetical posed by the ALJ to the VE omitted mention of Plaintiff's regular use of a nebulizer three or four times per day. (AR 38). Plaintiff's lawyer specifically asked the VE regarding Plaintiff's nebulizer use, "if [Plaintiff] were going to require unscheduled breaks during the course of the day for 30 minutes, say one or two times average per day, what would be the impact of that if that was on a sustained basis?" (AR 40). The VE testified that the proposed hypothetical would "eliminate [light sedentary jobs] and all other jobs." (<u>Id.</u>). However, the ALJ failed to acknowledge this exchange in his determination that Plaintiff was not disabled. (AR 19). Upon remand, any hypothetical posed to a vocational expert must include all limitations supported by the record. <u>See</u> <u>Magallanes</u>, 881 F.2d at 756.

\\
\\
\\

11

**D.  Remand Is Required To Remedy Defects In The ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

**VI.**

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that Judgment be entered REVERSING and REMANDING the decision of the Commissioner for further administrative proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 28, 2011                                    /S/

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[3] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."